# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT CINCINNATI

AHMAD SHALASH,

                Petitioner,          :     Case No. 1:18-cv-333

      - vs -                         District Judge Timothy S. Black
                                     Magistrate Judge Michael R. Merz

DAVID GRAY, Warden,
  Belmont Correctional Institution,

                             :

               Respondent.

---

# REPORT AND RECOMMENDATIONS

---

     Petitioner Ahmad Shalash brought this habeas corpus action with the assistance of counsel to obtain relief from his convictions for robbery and aggravated robbery in the Hamilton County Court of Common Pleas. The case is before the Court for decision on the Petition (ECF No. 1), the State Court Record (ECF No. 10), the Return of Writ (ECF No. 11), and Petitioner's Reply.

     Although originally filed at the Columbus seat of court, the case was transferred to the Western Division at Cincinnati in accordance with the habeas venue rule, S. D. Ohio Civ. R. 82.1(f). The Magistrate Judge reference in the case has recently been transferred to the undersigned to help balance the Magistrate Judge workload in the District.

## Litigation History

     Shalash was indicted by a Hamilton County, Ohio, grand jury under two separate case numbers for his involvement in four separate bank robberies. A trial jury, which heard both cases

together, convicted him of three counts of robbery and two counts of aggravated robbery in one case and one count of robbery in the second case. He was sentenced to an aggregate term of imprisonment of forty-four years and appealed to the First District Court of Appeals which affirmed. *State v. Shalash,* 1st Dist. Hamilton Nos. C-130748, 130749, 2014-Ohio-5006 (Nov. 12, 2014), appellate jurisdiction declined, 142 Ohio St. 3d 1517 (2015) ("*Shalash I*").

While the appeal was pending, Shalash filed a petition for post-conviction relief under Ohio Revised Code § 2953.21 which the trial court denied. Shalash again appealed to the First District, asserting as his single assignment of error that the trial court had erred in denying his post-conviction petition without a hearing. The First District affirmed. *State v. Shalash*, 1st Dist. Hamilton No. C-150614, 2016 Ohio App. LEXIS 4105 (Oct. 7, 2016), appellate jurisdiction declined, 149 Ohio St. 3d 1420 (2017) ("*Shalash II*").

Shalash then filed his Petition in this Court[1], pleading the following grounds for relief:

> **Ground One**: "The evidence was insufficient to convict Mr. Shalash, and the manifest weight of the evidence did not support the trial court's conviction in violation of the due process clause of the Fourteenth Amendment."
>
> **Supporting Fact(s)**: 1. "The State presented exhaustive evidence regarding a series of robberies that had occurred from early September to late October, 2012, yet provided no direct evidence that Mr. Shalash was involved other than the suspect testimony of his two co-defendants."
>
> **Ground Two**: "Mr. Shalash was denied a fair trial when he was subjected to repeated instances of prosecutorial misconduct during his trial."
>
> **Supporting Fact(s)**: 1. "After giving an extensive presentation of undisputed evidence none of which pointed to Mr. Shalash's involvement in the robberies, outside of the testimony of his co-defendants, the State, in closing argument, resorted to inflammatory

---

[1] The Return asserts the Petition was filed *pro se*, but Shalash has been represented by counsel throughout these proceedings.

tactics vilifying Mr. Shalash, inciting fear, referencing Mr. Shalash's religion, and vouching for the credibility of witnesses.

**Ground Three:** "Mr. Shalash was denied a fair trial when the trial court failed to instruct the jury that the firearm specifications must have been proven 'beyond a reasonable doubt.'"

**Supporting Fact(s)**: "Trial court failed to instruct jury on the standard of proof for the firearm specifications in Mr. Shalash's indictment. The trial court did not instruct the jury that Mr. Shalash must be found guilty of the specifications beyond a reasonable doubt."

**Ground Four:** "Mr. Shalash was denied his right to effective assistance of counsel and due process when the trial court denied his Petition for Post-Conviction Relief without a hearing" where he submitted evidence outside the trial record which supported his claims of ineffective assistance of counsel and affidavits of his co-defendants recanting their trial testimony.

**Supporting Fact(s)**: "Mr. Shalash's conviction was based on little to no direct evidence of his involvement in a series of robberies except for the suspect testimony of his co-defendants who both submitted affidavits recanting their testimony."

"Mr. Shalash's post-conviction petition was supported by two affidavits from Jennifer Nietz, his wife and co-defendant, and one affidavit from Jake Pfalz, his other co-defendant wherein they both recanted their trial testimony."

(Petition, ECF No. 1, PageID 5, 7-8, 10, 16-19.)

# Analysis

**Ground One: Conviction on Insufficient Evidence and Against the Manifest Weight of the Evidence**

In his First Ground for Relief, Shalash asserts his conviction is not supported by sufficient evidence and is against the manifest weight of the evidence. Shalash combined these two claims in his First Assignment on Direct Appeal and the First District decided them as follows:

**Sufficiency and Weight of the Evidence**

{¶ 36} In his first assignment of error, Shalash argues that his convictions for robbery, aggravated robbery, and the accompanying firearm specifications were supported by insufficient evidence and were contrary to the manifest weight of the evidence.

{¶ 37} To reverse a conviction for insufficient evidence, the reviewing court must be persuaded, after viewing the evidence in a light most favorable to the prosecution, that no rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Thompkins, 78 Ohio St.3d 380, 386, 1997 Ohio 52, 678 N.E.2d 541 (1997). To reverse a conviction as against the manifest weight of the evidence, the reviewing court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and conclude that in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice. Id. at 387.

{¶ 38} The state argued that Shalash was guilty as either a principal or as a complicitor to the four bank robberies. Complicity is defined as when a person "acting with the kind of culpability required for the commission of an offense * * * aid[s] or abets another in committing the offense." R.C. 2923.03(A)(2). To support a conviction for complicity by aiding and abetting, the state must show that the defendant assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime and that the defendant shared the criminal intent of the principal. *State v. Johnson*, 93 Ohio St. 3d 240, 754 N.E.2d 796, 2001-Ohio-1336 (2001), syllabus. Aiding and abetting can be inferred by presence, companionship, and conduct before and after the offense is committed. Id. at 243-245.

{¶ 39} Shalash was charged with robbery under R.C. 2911.02(A)(2). In order to prove the robbery counts, the state was required to prove that Shalash or his accomplice, in committing a theft offense,

inflicted, attempted to inflict, or threatened to inflict physical harm on another. He was also charged with aggravated robbery under R.C. 2911.01(A)(1). To convict Shalash of the aggravated-robbery counts, the state was required to prove that Shalash or his accomplice, in committing a theft offense, had a deadly weapon on or about his person or under his control and either displayed the weapon, brandished it, indicated that he possessed it, or used it. To establish the three-year firearm specification, the state was required to prove that Shalash or his accomplice had a firearm on or about his person or under his control while committing the offenses and displayed it, brandished it, indicated that he possessed it, or used it to facilitate the offenses. See R.C. 2941.145.

{¶ 40} Shalash primarily argues the state failed to prove his involvement in the offenses. He contends that Neitz's and Pfalz's credibility was undermined by the state's promises of leniency, and by conflicts in their testimony. He further argues that the state failed to present any physical evidence directly linking him to the offenses.

{¶ 41} But based upon our review of the evidence, we conclude the jury could have found that Shalash had participated in the robberies as either a principal or as an accomplice. Neitz and Pfalz testified that Shalash had conspired with them to rob the four banks to feed their heroin habits. Neitz's role was to "case" the banks, Pfalz's role was to rob the banks, and Shalash's role was to supply the disguises and the gun and to drive the getaway van. Neitz and Pfalz described the four bank robberies in detail. Pfalz testified that he had threatened to use a gun and that he had displayed a gun at the Cheviot Savings and First Financial Banks.

{¶ 42} Neitz's and Pfalz's testimony was supported by surveillance video from the four banks, surveillance video from St. James Elementary School near the Cheviot Savings Bank, and by surveillance video from a UDF and Dairy Mart near the First Financial Bank. Their testimony was also consistent with the testimony of the four banks' employees, and with Lanter's testimony that she had seen Pfalz, Neitz, and Shalash in a white van outside the St. James School, a couple of hours before the Cheviot Savings Bank had been robbed. Neitz and Pfalz testified that the money from each robbery had been divided among Pfalz, Neitz, and Shalash. Thus, a rational jury could find that Shalash had actively participated in the offenses.

{¶ 43} Shalash also argues that the jury's verdict was against the manifest weight of the evidence. He argues that neither Neitz nor Pfalz were credible given that they had admitted to either being less

than truthful on prior occasions or had demonstrated an inability to testify consistently under oath at trial, and they had agreed to testify against him for leniency in their own cases. But the jury was in the best position to evaluate their credibility and to determine the weight to be afforded their testimony. Given that the totality of the evidence established that Shalash had aided and abetted Neitz and Pfalz in the four offenses, and that Shalash has not demonstrated any basis for disturbing the jury's determination, we cannot conclude that Shalash's convictions were contrary to the manifest weight of the evidence. See *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. We, therefore, overrule his first assignment of error.

*Shalash I*, 2014-Ohio-5006.

In *State v. Thompkins,* 78 Ohio St. 3d 380 (1997)*,* the Ohio Supreme Court reaffirmed the important distinction between appellate review for insufficiency of the evidence and review on the claim that the conviction is against the manifest weight of the evidence.    It held:

In essence, sufficiency is a test of adequacy.  Whether the evidence is legally sufficient to sustain a verdict is a question of law.  *State v. Robinson* (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148.  In addition, a conviction based on legally insufficient evidence constitutes a denial of due process.  *Tibbs v. Florida* (1982), 457 U.S. 31, 45, 102, 387 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, *citing Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.  Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence.  *Robinson, supra*, 162 Ohio St. at 487, 55 O.O. at 388-389, 124 N.E.2d at 149.  Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.  It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them.  Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis added.)

When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony.  *Tibbs*, 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661.  See, also, *State v. Martin*

([1st Dist.]1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

78 Ohio St. 3d at 387. In *Martin*, 1st Dist, Judge Robert Black contrasted the manifest weight of the evidence claim:

> In considering the claim that the conviction was against the manifest weight of the evidence, the test is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. . . .

20 Ohio App. 3d at 172, ¶3 of the syllabus. The consequences of the distinction are important for a criminal defendant. The State may retry a case reversed on the manifest weight of the evidence; retrial of a conviction reversed for insufficiency of the evidence is barred by the Double Jeopardy Clause. *Tibbs v. Florida*, 457 U.S. 31, 40-41 (1982).

A manifest weight of the evidence claim is not a federal constitutional claim and is therefore not cognizable in habeas corpus. *Johnson v. Havener*, 534 F.2d 1232, 1234 (6th Cir. 1986). An allegation that a verdict was entered upon insufficient evidence, on the other hand, states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990) (en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the e of fact fairly to resolve conflicts in the testimony, to weigh the evidence an essential elements of the crime beyond a reasonable doubt . . . .  This familiar standard gives full play to the responsibility of the trier to draw reasonable inferences from basic facts to ultimate facts.

*Jackson*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, No. 3:03-po-2, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio Oct. 12, 2007) (Rice, J.). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991).  Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt.  *In re Winship, supra.*

Because of this distinction, a habeas corpus court cannot decide on the merits a manifest weight claim.  To put it another way, whether a verdict is against the manifest weight is a question of state law and habeas relief is available only for federal constitutional violations.  28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983).

Respondent asserts that merits review of the sufficiency of the evidence claim is also barred by Petitioner's failure to fairly present that claim to the Supreme Court of Ohio (Return, ECF No. 11, PageID 1125).  While conceding that he did not "present sufficiency of the evidence as a 'proposition of law' in his Memorandum in Support of Jurisdiction," he asserts he did argue the evidence was insufficient in his general argument for discretionary review (Reply, ECF No. 15, PageID 1171).

Upon examination of the Memorandum in Support of Jurisdiction (State Court Record, ECF No. 10, Ex. 15, PageID 155 *et seq.*), the Magistrate Judge notes that none of the three propositions of law deals with the sufficiency or weight of the evidence.  The phrase "decidedly

little evidence[,]" *id*. at PageID 158, is used to describe the evidence at trial, but there is no legal argument at all about the applicability of *Jackson* , the relevant United States Supreme Court precedent, or indeed any case law related to this issue.

The Magistrate Judge concludes that Shalash did not fairly present his sufficiency of the evidence claim to the Supreme Court of Ohio. His complaint that there was "decidedly little evidence" does not assert that the First District erred in overruling his First Assignment of Error. As an appellate court, inundated with thousands of possible appeals a year, the Supreme Court of Ohio cannot be expected to comb the record on appeal looking for issues that are not clearly presented. To hold that this issue was fairly presented would essentially wipe out the requirement that a habeas petitioner must complete a full round of state court review. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).

To combat this conclusion, Petitioner relies on the analysis in *Peterson v. Miller,* No. 1:16-cv-509, 2017 U.S. Dist. LEXIS 215391 (N.D. Ohio Dec. 7, 2017), to argue for "liberal construction" of his Supreme Court Memorandum (Traverse, ECF No. 15, PageID 1172). In *Peterson*, Magistrate Judge Greenberg liberally construed Peterson's *pro se* propositions of law in the Ohio Supreme Court as raising sufficiency of the evidence claims. *Id.* at * 44. In general, the filings of *pro se* litigants are to be liberally construed. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). But Shalash, unlike Peterson, did not appear *pro se* in the Supreme Court of Ohio, but was represented by counsel. And even in *Peterson* the Magistrate Judge was unwilling to find the liberally-construed propositions of law raised a federal constitutional question. *Peterson* supports the proposition that a federal constitutional claim must at least be stated in a proposition of law in the Memorandum in Support of Jurisdiction; an oblique reference to the weakness of the evidence is insufficient.

Alternatively, Shalash seeks to excuse any procedural default of this claim by asserting he is actually innocent of these crimes. Adequate proof of actual innocence will excuse a procedural default and allow a habeas court to consider a claim on the merits. *Schlup v. Delo*, 513 U.S. 298, 319 (1995). The Sixth Circuit has set the following standard for proving actual innocence:

> [I]f a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup v. Delo,* 513 U.S. 298, 316 (1995). Thus, the threshold inquiry is whether "new facts raise[] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id*. at 317. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id*. at 327. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 140 L. Ed. 2d 828, 118 S. Ct. 1604 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial" *Schlup*, 513 U.S. at 324. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id.* at 321.

*Souter v. Jones,* 395 F.3d 577, 590 (6th Cir. 2005). As new evidence Shalash relies on the affidavits of his co-defendants Jennifer Neitz (Shalash's wife and mother of three of his children) and Jake Pfalz recanting their trial testimony. This is simply not "new reliable evidence" within the meaning of *Schlup*. Shalash himself implicitly characterizes these witnesses as unreliable by accusing them of perjuring themselves at trial (Traverse, ECF No .15, PageID 1169).

The insufficient evidence portion of Ground One is procedurally defaulted, and that default is not excused by Shalash's actual innocence. That portion of Ground One should therefore be dismissed as defaulted. The manifest weight portion of Ground One is not cognizable in habeas

corpus and should be dismissed on that basis.


**Ground Two:  Prosecutorial Misconduct**


      In his Second Ground for Relief, Shalash claims he was denied a fair trial by repeated acts of prosecutorial misconduct.  Shalash raised prosecutorial misconduct as his Second Assignment of Error on direct appeal and the First District decided it as follows:

> **Prosecutorial Misconduct**
>
> {¶ 44} In his second assignment of error, Shalash argues that multiple instances of prosecutorial misconduct denied him a fair trial. Shalash argues the prosecuting attorney committed misconduct during closing argument when he presented extensive evidence of the robberies, focused on the scary nature of the crimes, argued that the crimes had been committed during a "heroin-induced frenzy," made inflammatory remarks about Shalash's religion, and improperly vouched for the credibility of a witness.
>
> {¶ 45} A prosecuting attorney has wide latitude to summarize the evidence and zealously advocate the state's position during closing argument. *See State v. Richey*, 64 Ohio St.3d 353, 362, 1992 Ohio 44, 595 N.E.2d 915 (1992). The propriety of a specific remark by a prosecutor must not be judged in isolation, but in light of the tenor and context of the entire closing argument. *See State v. Slagle*, 65 Ohio St.3d 597, 607, 605 N.E.2d 916 (1992). Improper remarks during closing argument are grounds for reversal when the remarks serve to deny the defendant a fair trial. *See State v. Maurer*, 15 Ohio St.3d 239, 266, 15 Ohio B. 379, 473 N.E.2d 768 (1984).
>
> {¶ 46} As Shalash admits, he did not object to any of the prosecutor's comments during closing argument. He, therefore, has waived all but plain error. *See State v. D'Ambrosio*, 73 Ohio St.3d 141, 143-44, 1995 Ohio 129, 652 N.E.2d 710 (1995). Based upon our review of the record, we cannot conclude that the prosecutor's comments during closing argument rose to the level of plain error.
>
> {¶ 47} The prosecutor's statements extensively summarizing the evidence against Shalash were not improper. The prosecutor's comments focusing on the "scary nature" of the robberies were

based upon testimony from bank employees that they had been threatened with a gun, and their fear that Pfalz could have fatally shot them had he chosen to do so. Likewise, the prosecutor's statement that the robberies were the result of a "heroin-induced frenzy," was based upon testimony from Neitz and Pfalz that they had committed the robberies to feed their heroin habit, and that they had robbed the banks while "high" on heroin.

{¶ 48} Shalash next argues that the prosecutor committed misconduct when he repeatedly made inflammatory remarks about Shalash's religion. He points to three references to religion in the state's closing argument. The first reference occurred when the prosecuting attorney stated that Shalash and Neitz had been married at a mosque in Clifton. But nothing about this statement would serve to inflame the jury's passions. The second reference occurred during the prosecutor's discussion of Neitz's and Pfalz's credibility, when he said,

> Is it common sense? Is it believable? Do you believe that a Muslim wife is going to somehow be driving around town with an outsider, Pfalz, a stranger to the family, robbing banks, and the husband has been with him just moments before and somehow he leaves the picture with the kids in the van?

The third reference occurred during the rebuttal portion of the state's closing argument when the prosecutor stated,

> Are you kidding me? Give me a break. And a Muslim wife on top of that. In that culture the women aren't even supposed to be out without a male relative and we got her robbing banks with a non-male relative with the kids in the truck. Give me a break. Give me a break.

{¶ 49} Although the comments were arguably inappropriate, they were not so inflammatory that we can conclude that Shalash's convictions resulted from passion and prejudice instead of the state's proof of his guilt. The state produced overwhelming evidence of Shalash's guilt, and none of the cited comments were so prejudicial or outcome determinative as to constitute plain error and to deny Shalash a fair trial.

{¶ 50} Finally, Shalash argues that the prosecuting attorney improperly vouched for the credibility of the school nurse when he said, "Obviously she's not going to lie to you." It is improper for an attorney to express a personal belief or opinion as to the credibility

> of a witness. *State v. Williams*, 79 Ohio St.3d 1, 12, 1997 Ohio 407,
> 679 N.E.2d 646 (1997). Here, the prosecutor did not improperly
> vouch for the nurse's credibility as a witness. He merely argued that
> she was a reliable witness and that she lacked any motive to lie.
> Therefore, we overrule Shalash's second assignment of error.

*State v. Shalash,* 2014-Ohio-5006.

Respondent asserts that merits review of this claim is barred by Shalash's procedural

default in that he made no objections to the prosecutor's comments in closing. (Return, ECF No.

11, PageID 1125-26).

The procedural default doctrine in habeas corpus is described by the Supreme Court as

follows:

> We now make it explicit: in all cases in which a state prisoner has
> defaulted his federal claims in state court pursuant to an adequate
> and independent state procedural rule, federal habeas review of the
> claims is barred unless the prisoner can demonstrate cause of the
> default and actual prejudice as a result of the alleged violation of
> federal law; or demonstrate that failure to consider the claims will
> result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406

(6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights

claim he could not raise in state court because of procedural default. *Engle v. Isaac*, 456 U.S. 107,

110 (1982); *Wainwright v. Sykes*, 433 U.S. 72 (1977). "Absent cause and prejudice, a federal

habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal

habeas corpus review." *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000) (internal quotation

marks and citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110;

*Wainwright*, 433 U.S. at 87.

> [A] federal court may not review federal claims that were
> procedurally defaulted in state court—that is, claims that the state
> court denied based on an adequate and independent state procedural
> rule. E.g., *Beard v. Kindler*, 558 U.S. 53, 55, 130 S. Ct. 612, 175 L.

> Ed. 2d 417 (2009). This is an important "corollary" to the exhaustion requirement. *Dretke v. Haley*, 541 U.S. 386, 392, 124 S. Ct. 1847, 158 L. Ed. 2d 659 (2004). "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first instance." *Coleman,* 501 U.S., at 731-732, 111 S. Ct. 2546, 115 L. Ed. 2d 640. The procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine. See *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).

*Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Guilmette v. Howes,* 624 F.3d 286, 290 (6ᵗʰ Cir. 2010) (en banc); *Eley v. Bagley*, 604 F.3d 958, 965 (6ᵗʰ Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6ᵗʰ Cir. 1998), citing *Maupin v. Smith*, 785 F.2d 135, 138 (6ᵗʰ Cir. 1986); accord *Jacobs v. Mohr*, 265 F.3d 407, 417 (6ᵗʰ Cir. 2001); *Lott v. Coyle*, 261 F.3d 594, 601-02 (6ᵗʰ Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> . . . .
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin*, 785 F.2d at 138; accord *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002). A habeas petitioner can overcome a procedural default by showing cause for the default and prejudice from the asserted error. *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015).

Ohio has a relevant procedural rule, to wit, that a litigant must make a contemporaneous objection to error occurring in the trial court so that the error can be corrected, if possible, in the trial court. *State v. Glaros*, 170 Ohio St. 471 (1960), paragraph one of the syllabus; *see also State v. Mason*, 82 Ohio St. 3d 144, 162 (1998). The First District enforced that rule by reviewing only for plain error. An Ohio state appellate court's review for plain error is enforcement, not waiver, of a procedural default. *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012), *citing Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001), *citing Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000) (plain error review does not constitute a waiver of procedural default).

The contemporaneous objection rule is an adequate and independent state ground of decision. *Wogenstahl*, 668 F.3d at 334; *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010); *Nields v. Bradshaw*, 482 F.3d 442, 451 (6th Cir. 2007); *Biros,* 422 F.3d at 387; *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), citing *Hinkle*, 271 F.3d at 244; *Scott v. Mitchell*, 209 F.3d 854, 867-68 (6th Cir. 2000), *citing Engle,* 456 U.S. at 124-29. *S*

To overcome this procedural default, Shalash asserts it was ineffective assistance of trial counsel to fail to object. In order to rely on ineffective assistance of trial counsel to excuse a

procedural default, a petitioner must present the ineffective assistance claim to the state courts for adjudication in the ordinary fashion those courts have prescribed for such claims. *Edwards v. Carpenter*, 529 U.S. 446 (2000). In other words, ineffective assistance of trial counsel will not serve as cause if that claim is itself procedurally defaulted.

Because failure to make objections to portions of a closing argument is an omission that appears on the face of the appellate record, Ohio law requires that it be presented on direct appeal or be later barred by *res judicata. State v. Perry,* 10 Ohio St. 2d 175 (1967).

Shalash objects that he did not procedurally default his claim of ineffective assistance of trial counsel in this regard because he raised it both in the First District and on further appeal to the Supreme Court of Ohio ((Reply, ECF No. 15, PageID 1179, citing Appellant's Brief (State Court Record, ECF No. 10, Ex. 10, and Memorandum in Support of Jurisdiction, *Id.* at Ex. 15)).

Petitioner did not raise ineffective assistance of trial counsel as an assignment of error on direct appeal, although he did accuse his attorney of ineffective assistance for not objecting (Appellant's Brief, State Court Record, ECF No. 10, Ex. 10, PageID 101). However, his entire argument consists of: "Furthermore, Mr. Shalash submits that he received the ineffective assistance of counsel when his trial counsel failed to object to these clearly prejudicial instances of prosecutorial misconduct." *Id.* That is a purely conclusory claim. No authority is cited for the proposition that failure to object to any of the alleged instances of prosecutorial misconduct is deficient performance. Like Shalash's reliance on the First Ground for Relief on the notion that stating there was "decidedly little evidence" suffices to preserve a sufficiency of the evidence claim, his argument here is unpersuasive. A constitutional claim cannot be preserved for habeas review by reciting talismanic words – an actual argument must be made. Merely using talismanic constitutional phrases like "fair trial" or "due process of law" does not constitute raising a federal

constitutional issue. *Slaughter v. Parker,* 450 F.3d 224, 236 (6th Cir. 2006); *Franklin v. Rose,* 811 F.2d 322, 326 (6th Cir. 1987). "A lawyer need not develop a constitutional argument at length, but he must make one; the words 'due process' are not an argument." *Riggins v. McGinnis*, 50 F.3d 492, 494 (7th Cir. 1995). The same must be said of "ineffective assistance."

As with Ground One, merits review of Shalash's Second Ground for Relief is barred by his failure to make a contemporaneous objection.

**Ground Three: Incomplete Jury Instructions on the Firearm Specification**

In this Third Ground for Relief, Shalash claims the trial judge did not instruct the jury that the required standard of proof on the firearm specification was proof beyond a reasonable doubt. Petitioner raised this issue as his Third Assignment of Error on direct appeal and the First District decided it as follows:

> ### *Jury Instruction on the Firearm Specifications*
>
> {¶ **51**} In his third assignment of error, Shalash maintains the trial court erred by failing to separately instruct the jury that the state had to prove the firearm specifications beyond a reasonable doubt.
>
> {¶ **52**} Shalash did not object to any of the jury instructions at trial. He argues, nonetheless, that under the United States Supreme Court's decision in *Sullivan v. Louisiana*, 508 U.S. 275, 281, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), the trial court's failure to give this instruction is a "structural error" requiring automatic reversal. The state argues, on the other hand, that the trial court's failure to instruct the jury is a trial error amenable to a "plain error" analysis. *See State v. Blankenship*, 102 Ohio App.3d 534, 546, 657 N.E.2d 559 (12th Dist.1995); *State v. Norman*, 1st Dist. Hamilton No. C-920202, 1993 Ohio App. LEXIS 133, *8-9 (Jan. 20, 1993).

{¶ **53**} After reviewing the case law and the record, we agree with the state that a plain-error analysis applies. The structural error at issue in *Sullivan* was the denial of the right to trial by jury by giving a defective reasonable doubt instruction. *Sullivan* at 279. The instruction the trial court gave to the jury suggested that the jury had to have a higher degree of doubt than is required for acquittal under the reasonable-doubt standard. *Id.* at 276-277. The *Sullivan* court held that a "beyond-a-reasonable-doubt instruction" that misdescribes the burden of proof requires per se reversal. *Id.* at 281.

{¶ **54**} Here, however, the trial court properly instructed the jury on the reasonable-doubt standard at multiple times during the jury charge. At the beginning of the jury charge, the trial court stated:

> [t]here is no requirement that the defendant present any evidence. The duty of proof rests entirely with the state of Ohio. The defendant must be acquitted unless the state produces evidence which convinces you beyond a reasonable doubt of every essential element of the crime charged in the indictment. Reasonable doubt. Reasonable doubt is present when the jurors after they have carefully considered and compared all the evidence cannot say they are firmly convinced of the truth of the charge. It is a doubt based on reason and common sense. Reasonable doubt is not mere possible human doubt because everything relating to human affairs or depending on moral evidence is open to some possible or imaginary doubt. Proof beyond a reasonable doubt is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of his or her own affairs.

At the end of each count of the indictment, the trial court instructed the jury that the state was required to prove the elements of the offense listed in that count of the indictment beyond a reasonable doubt.

{¶ **55**} The trial court specifically instructed the jury that he aggravated-robbery charges in counts 3 and 5 of the indictment included the necessity of finding that Shalash, while committing the robbery, or immediately fleeing thereafter, "had a deadly weapon on or about his person, or under his control, and displayed, brandished, indicated possession or used the deadly weapon, to wit: a firearm." The court also instructed the jury that it specify on counts 3 and 5 whether it found that Shalash "did have on or about his person, or under his control, a firearm, while committing the offense of aggravated robbery."

{¶ 56}   When taken together, these jury instructions satisfied the requirement of instructing the jury that the firearm specifications had to be proven beyond a reasonable doubt. Therefore, the trial court did not commit plain error by failing to separately instruct the jury that the state had to prove the firearm specifications beyond a reasonable doubt. *See Blankenship*, 102 Ohio App.3d at 546, 657 N.E.2d 559; *State v. Norman*, 1st Dist. Hamilton No. C-920202, 1993 Ohio App. LEXIS 133, at *8-9; *State v. Dubose*, 7th Dist. Mahoning No. 00-CA-60, 2002-Ohio-3020, ¶ 20-35; *State v. Penson*, 2d Dist. Montgomery No. 9193, 1990 Ohio App. LEXIS 732, *32 (Feb. 26, 1990); *State v. Small*, 8th Dist. Cuyahoga No. 68167, 1995 Ohio App. LEXIS 4844, *19-20 (Nov. 2, 1995). We, therefore, overrule Shalash's third assignment of error and affirm the judgment of the trial court.

*Shalash I.*

Respondent asserts this Third Ground for Relief is procedurally defaulted for the same reason as Ground Two:  failure to make a contemporaneous objection (Return of Writ, ECF No. 11, PageID 1126).  As noted above with respect to Ground Two, state court review for plain error is an enforcement of the contemporaneous objection rule which is itself an adequate and independent state procedural ground of decision.

Shalash admits the procedural default but says it is excused because "he will suffer a miscarriage of justice if he is unable to bring this claim on the merits as the defective jury instruction created a structural error . . ."  (Reply, ECF No. 15, PageID 1183).  This argument confuses two different strains of habeas corpus doctrine.  When an error is properly characterized as "structural," that means it is per se harmful, that the courts do not evaluate it for harmlessness as is true of other constitutional errors.  So, for example, an error under *Faretta v. California,* 422 U.S. 806, 812-13 (1975), denying a criminal defendant the rights of self-representation, is structural *McKaskle v. Wiggins*, 465 U.S. 168, 177 n. 8 (1984), in that it affects the entire trial proceeding.  The same thing is true of *Batson* violations, *Snyder v. Louisiana*, 552 U.S. 472, 478

(2008), judicial bias or complete denial of counsel, *Johnson v. United States*, 520 U.S. 461, 468-69 (1997) (citations omitted) or racial discrimination in the selection of a grand jury. *Vasquez v. Hillery*, 474 U.S. 254 (1986).

On the other hand, the "miscarriage of justice" exception to procedural default is available only on adequate proof of actual innocence. *Calderon v. Thompson*, 523 U.S. 538, 557-58 (1998) (holding that "avoiding a miscarriage of justice as defined by our habeas corpus jurisprudence" requires "a strong showing of actual innocence").

As noted above, Shalash has not produced proof of actual innocence which satisfies the *Schlup* gateway requirement. Nor has he cited any authority for the proposition that a "structural error" cannot be forfeited by failure to make a contemporaneous objection.

Even though the First District decided the Third Assignment of Error on plain error review, its decision is still entitled to AEDPA deference. *Fleming v. Metrish*, 556 F.3d 520, 532 (6th Cir. 2009); *Kittka v. Franks*, 539 F. App'x 668, 672 (6th Cir. 2013); *Bond v. McQuiggan*, 506 Fed. Appx. 493, 498 n. 2 (6th Cir. 2013); *Stojetz v. Ishee*, No. 2:04-cv-263, 2014 U.S. Dist. LEXIS 137501 *231 (S.D. Ohio Sept. 24, 2014) (Frost, J.). That is, the decision must be deferred to unless it is contrary to or an objectively unreasonable application of clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

The First District recognized that the controlling Supreme Court precedent is *Sullivan v. Louisiana*, 508 U.S. 275 (1993). *Shalash I*, 2014-Ohio-5006, at ¶¶ 52-53. In *Sullivan,* the Court found that the complained-of instruction was "essentially identical to the one held unconstitutional in *Cage v. Louisiana* . . . ." 508 U.S. at 277, citing 498 U.S. 39 (1990) (per curiam), overruled on

20

other grounds in *Estelle*, 506 U.S. at 72 n.4. Justice Scalia noted that the requirement of proof

beyond a reasonable doubt, "which was adhered to by virtually all common-law jurisdictions,"

was required in both federal and state courts. *Id.* at 278, citing *In re Winship,* 397 U.S. 358 (1970).

The instruction given in both *Sullivan* and *Cage* read:

> "If you entertain a reasonable doubt as to any fact or element
> necessary to constitute the defendant's guilt, it is your duty to give
> him the benefit of that doubt and return a verdict of not guilty. Even
> where the evidence demonstrates a probability of guilt, if it does not
> establish such guilt beyond a reasonable doubt, you must acquit the
> accused. This doubt, however, must be a reasonable one; that is one
> that is founded upon a real tangible substantial basis and not upon
> mere caprice and conjecture. *It must be such doubt as would give
> rise to a grave uncertainty*, raised in your mind by reasons of the
> unsatisfactory character of the evidence or lack thereof. A
> reasonable doubt is not a mere possible doubt. *It is an actual
> substantial doubt*. It is a doubt that a reasonable man can seriously
> entertain. What is required is not an absolute or mathematical
> certainty, but a *moral certainty*." 554 So. 2d 39, 41 (La. 1989)
> (emphasis added).

*Cage*, 498 U.S. at 40. The Court rejected this instruction because it overstated the amount of doubt

the jury must have by equating "reasonable doubt" with "grave uncertainty" and "actual substantial

doubt." *Id.* at 41.

The First District reasonably interpreted *Sullivan* as proscribing a "defective reasonable

doubt instruction." *Shalash I,* 2014-Ohio-5006 at ¶ 53, citing 508 U.S. at 279. In contrast to

*Sullivan,* the First District found that the trial court here "instructed the jury on the reasonable

doubt standard multiple times during the jury charge." *Id.* at ¶ 54. The definition of reasonable

doubt used by the trial court was

> Reasonable doubt is present when the jurors after they have
> carefully considered and compared all the evidence cannot say they
> are firmly convinced of the truth of the charge. It is a doubt based
> on reason and common sense. Reasonable doubt is not mere possible
> human doubt because everything relating to human affairs or
> depending on moral evidence is open to some possible or imaginary

doubt. Proof beyond a reasonable doubt is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of his or her own affairs.

*Id.*

This definition of reasonable doubt closely follows the model in Ohio Jury Instructions:

"Reasonable doubt" is present when the jurors, after they have carefully considered and compared all the evidence, cannot say they are firmly convinced of the truth of the charge. It is a doubt based on reason and common sense. "Reasonable doubt" is not mere possible doubt, because everything relating to human affairs or depending on moral evidence is open to some possible or imaginary doubt. "Proof beyond a reasonable doubt" is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of the person's own affairs.

2 OJI-CR 405.07. This definition is prescribed by statute in Ohio. Ohio Revised Code § 2901.05(E).

The Sixth Circuit held recently that "[a] reasonable-doubt instruction will be problematic only if there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the *Winship* standard[,]" but "stress[ed] that departures from pattern instructions regarding the reasonable-doubt standard tend only to muddy the waters further. "At worst such variations may be prejudicial to a defendant; at best they add needlessly to the work of appellate courts while being of no real benefit to the jury." *United States v. Rios*, 830 F.3d 403, 433, 434 (6th Cir. 2016) (internal quotation marks and citations omitted).

Petitioner's complaint is not about the **content** of the trial court's reasonable doubt instruction, but about the trial judge's failure to repeat it again in connection with the firearm specification.

During the course of the jury charge, Hon. Charles J. Kubicki, Jr., the trial judge, told the

jurors that, when considering direct and circumstantial evidence together, they had to satisfy jurors

of the "defendant's guilt beyond a reasonable doubt." (Transcript, State Court Record, ECF No.

10-4, PageID 1046.) He repeated that language in detailing that the State had to prove whatever

was in the indictment beyond a reasonable doubt. *Id.* at 1049. He repeated it again in describing

the presumption of innocence. *Id.* He expressly told the jury that "[t]he defendant must be

acquitted unless the States produces evidence which convinces you beyond a reasonable doubt of

every essential element of the crime charged in the indictment." *Id.* This appears just before the

definition of reasonable doubt quoted above. Then, the requirement of a finding of guilt beyond a

reasonable doubt was repeated each time the judge read the elements of the individual crimes.

In applying *Sullivan*, the First District expressly considered the instructions as a whole and

found them adequate. *Shalash I*, 2014-Ohio-5006, at ¶ 56. That was not contrary to nor an

objectively unreasonable application of *Sullivan*. Therefore, if the Court should reject the

procedural default defense on Ground Three, it should conclude Shalash is not entitled to relief on

the merits.


**Ground Four: Denial of the Post-Conviction Petition Without a Hearing Violates Shalash's Rights to Effective Assistance of Counsel and Due Process of Law**


In his Fourth Ground for Relief, Shalash claims his rights to effective assistance of counsel,

guaranteed by the Sixth Amendment, and due process of law, guaranteed by the Fourteenth

Amendment.

On appeal from denial of his petition for post-conviction, Shalash's sole assignment of

error read "The trial court abused its discretion when it denied Mr. Shalash's post-conviction

motion to vacate[2] without holding a hearing." (Appellant's Brief, State Court Record, ECF No. 10, PageID 383). No claim is made in the body of the Brief that failure to hold a hearing was a violation of either the Sixth Amendment or the Fourteenth. Indeed, the only federal decision cited is *Strickland v. Washington,* 466 U.S. 668 (1984), for the underlying standard of ineffective assistance of trial counsel. Thus, the First District did not review the constitutional claims made in the Fourth Ground for Relief – violations of the Sixth and Fourteenth Amendments by denying a hearing – because those claims were not fairly presented to it.

The claim that was presented on appeal – that the trial judge abused his discretion in denying the petition without a hearing – does not state a claim cognizable in habeas. Abuse of discretion is not a denial of due process. *Sinistaj v. Burt,* 66 F.3d 804, 807-08 (6th Cir. 1995). Put another way, this Court cannot review whether the First District correctly applied Ohio law on when a post-conviction petition may be dismissed without a hearing. *State v. Calhoun*, 86 Ohio St. 3d 279 (1999).

In addition to applying Calhoun, the First District also decided that Shalash had presented insufficient evidence to warrant relief. It noted that actual innocence, attempted to be shown by the recanting affidavits, is not a basis for a constitutional claim. *Shalash II*, 2016 Ohio App. LEXIS 4105, at * 2. . The deficiencies in the recantation affidavits provided an adequate basis for rejecting them. *Id.* Finally, the evidence offered in support of the ineffective assistance of trial counsel claim, even if accepted, did not show the result of the trial was likely to have been different. *Id.* at *3.

In arguing Ground Four in the Reply/Traverse, Shalash makes the plain claim that denying his post-conviction petition without a hearing denied him due process of law (ECF No. 15, PageID

---

[2] The context makes it clear that the reference is to the petition for post-conviction relief and not some other motion as in a motion to vacate a guilty plea.

1185).  No constitutional claim to this effect was fairly presented to the First District.  But even if we were to liberally construe the post-conviction appeal as if it had presented such a claim, it would be without merit:  no decision of the United States Supreme Court recognizes a due process right to an evidentiary hearing on a post-conviction petition.  Shalash cites no case law purportedly making such a holding and none is known to the Court.

In sum, Shalash's Fourth Ground is procedurally defaulted for lack of fair presentation to the state courts.  In the alternative, it is without merit because (1) there is no constitutional guarantee of an evidentiary hearing in post-conviction and (2) the First District's decisions on the underlying constitutional claims are neither contrary to nor an objectively un reasonable application of clearly established Supreme Court precedent.

## Conclusion

`

In accordance with the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

April 23, 2019.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party=s objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140, 153-55 (1985) *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).