# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| AHMAD SHALASH, | : | Case No. 1:18-cv-333 |
| | : | |
| Petitioner, | : | Judge Timothy S. Black |
| | : | Magistrate Judge Michael R. Merz |
| vs. | : | |
| | : | |
| Warden, BELMONT CORRECTIONAL | : | |
| INSTITUTION, | : | |
| | : | |
| Respondent. | : | |

## DECISION AND ENTRY
## ADOPTING THE REPORTS AND RECOMMENDATIONS
## OF THE UNITED STATES MAGISTRATE JUDGE (Docs. 18, 23, 28)
## AS MODIFIED HERE

This case is before the Court pursuant to the Order of General Reference to United States Magistrate Judge Michael R. Merz. Pursuant to such reference, the Magistrate Judge, on April 24, 2019, submitted a Report and Recommendation recommending that Petitioner's habeas petition brought under 28 U.S.C. § 2254 be dismissed (Doc. 18). Petitioner filed objections on June 5, 2019 (Doc. 21), which the Magistrate Judge addressed in a supplemental Report and Recommendation (Doc. 23). Petitioner filed objections to the supplemental Report and Recommendation (Doc. 26), which were followed by a second supplemental Report and Recommendation (Doc. 28). Petitioner submitted a final set of objections on August 6, 2019 (Doc. 29).

## I. BACKGROUND

Petitioner Ahmad Shalash was charged with four counts of robbery and two counts of aggravated robbery for participating in the robbery of four banks in the fall of 2012

with his wife, Jennifer Neitz, and their friend, Jake Pfalz.  *State v. Shalash*, Nos. C-130746, C-130749, 2014 WL 5840147, at *1, *4 (Ohio Ct. App. Nov. 12, 2014).  Neitz and Pfalz testified against Shalash at trial, and he was convicted of all charges by a jury in Hamilton County, Ohio and sentenced to an aggregate term of imprisonment of forty-four years.  *Id.* at *5-8.  Shalash appealed his convictions to the First District Court of Appeals, which affirmed.  *Id.* at *12.  Shalash also filed a petition for post-conviction relief pursuant to Ohio Revised Code ("R.C") § 2953.21.  *State v. Shalash*, No. C-150614, 2016 Ohio App. LEXIS 4105, at *1 (Ohio Ct. App. Oct. 7, 2016).  His petition was denied by the state trial court, and the First District affirmed the denial.  *Id.* at *3.

On December 11, 2017, Shalash filed the instant habeas petition under 28 U.S.C. § 2254 asserting four separate grounds for relief.  For the reasons stated below, the Court adopts the Magistrate Judge's recommendation and denies Shalash's petition for habeas relief.

## II.    ANALYSIS

### A.    Ground One

Petitioner's first ground for relief in his § 2254 habeas petition asserts that "[t]he evidence was insufficient to convict Mr. Shalash, and the manifest weight of the evidence did not support the trial court's conviction in violation of the due process clause of the Fourteenth Amendment."  (Doc. 1 at 5).  The Magistrate Judge found that Petitioner's manifest-weight-of-the-evidence claim is not a federal constitutional claim, and therefore is not a cognizable habeas claim.  (Doc. 18 at 7); *see Schwarzman v. Gray*, No. 17-3859, 2018 WL 994352, at *3 (6th Cir. Jan. 30, 2018).  Petitioner does not object to this

finding, and the Court agrees with and adopts the Magistrate Judge's recommendation that the manifest-weight-of-the-evidence claim be dismissed.

The Report and Recommendation further found Petitioner's sufficiency-of-the-evidence claim to be cognizable, but that Petitioner did not adequately raise the claim in state court, resulting in procedural default. (*Id.* at 8-9). The Magistrate Judge also found that Shalash did not adequately demonstrate actual innocence to excuse the default. (*Id.* at 10).

Petitioner objects to the Magistrate Judge's finding of procedural default, asserting that he adequately raised the sufficiency-of-the-evidence claim on direct appeal to the state supreme court based on factual arguments made in his brief, including that there was no physical evidence linking him to the charged robberies. (Doc. 21 at 5-6) (citing *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004) (noting that whether a petitioner "alleg[es] facts well within the mainstream of constitutional law" is "significant to the determination as to whether a claim has been fairly presented")). Petitioner also relies on *Peterson v. Miller*, in which the court found that a *pro se* petitioner had adequately raised a sufficiency-of-the-evidence claim based on the assertion of factual arguments including a lack of physical evidence linking him to the crimes. (*Id.* at 5) (citing *Peterson v. Miller*, No. 1:16-cv-509, 2017 WL 6987994, at *15-16 (N.D. Ohio Dec. 7, 2017)).

Petitioner's memorandum to the Supreme Court of Ohio on direct appeal raised three "propositions of law," none of which involved a sufficiency-of-the-evidence claim. (*See* Doc. 10 at 109). Nevertheless, Shalash argues that like the petitioner in *Peterson*, he fairly presented the claim based on *factual arguments*, including that there was a lack of

physical evidence linking him to the crimes. (Doc. 21 at 6). For example, the introductory paragraphs of his memorandum stated generally that the state had "decidedly little evidence" that Petitioner was involved in the bank robberies. (Doc. 10 at 110). Shortly after this statement, Shalash's memorandum goes on to state that because "the State knew it had 'slim pickings' to work with" the prosecutor made inflammatory statements concerning Petitioner's Muslim faith. (*Id.*). In the very next paragraph, Petitioner stated that "[f]or its part, the trial court was no help" in that it erroneously instructed the jury on the firearm specification. (*Id.*). Thus, in context, Petitioner's statements concerning the lack of evidence were made in support of his express propositions of law regarding prosecutorial misconduct and erroneous jury instructions and were not made in support of a separate sufficiency-of-the-evidence claim.

The Court agrees with the Magistrate Judge that Petitioner's reliance on *Peterson* is not persuasive. In that case, the *pro se* petitioner raised two propositions of law on appeal to the state supreme court, yet neither proposition "clearly identif[ied] the nature of the claims asserted." 2017 WL 6987994, at *15. Liberally construed, the court found that both propositions appeared to challenge the sufficiency of the evidence based upon factual assertions concerning a lack of evidence linking the petitioner to the crime. *Id.* at *44-45. By contrast, Petitioner's propositions of law presented to the Supreme Court of Ohio were not vague, and rather, clearly articulated arguments unrelated to a sufficiency-of-the-evidence claim. Accordingly, *Peterson* is distinguishable for two reasons. First, the court liberally construed the petition because the petitioner was *pro se*, and second,

the petitioner in *Peterson* asked the court to consider factual arguments *which supported the propositions of law actually raised*.

Moreover, Petitioner expressly raised a sufficiency-of-the-evidence claim as an "assignment of error" on direct appeal to the First District Court of Appeals stating, "[t]he evidence was insufficient to convict Mr. Shalash . . . ."  (Doc. 10 at 40).  This shows that Shalash knew how to raise such a claim and suggests that he intentionally abandoned the claim on his appeal to the Supreme Court of Ohio.[1]  *See, e.g.*, *Bailum v. Warden, Lebanon Corr. Inst.*, 832 F. Supp. 2d 893, 900 (S.D. Ohio 2011) (finding failure to exhaust § 2254 habeas claim when petitioner raised claim on appeal to the state court of appeals but abandoned the claim on appeal to the Supreme Court of Ohio), *report and recommendation adopted*, 832 F. Supp. 2d 893 (S.D. Ohio 2011).

Next, the Court will address Petitioner's objection to the Magistrate Judge's finding that Petitioner's failure to exhaust his default is not excused by the "actual innocence" exception.  Petitioner supports his claim of innocence with affidavits of his co-defendants recanting their testimony.  (Doc. 21 at 6).

The actual innocence exception to default is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."  *Davis v. Bradshaw*, 900 F.3d 315, 326 (6th Cir. 2018) (citing *Schlup v. Delo*, 513 U.S. 298, 315 (1995)).  Yet, "this innocence gateway is a narrow one" and "should open only when a petition presents

---

[1] Shalash was represented by the same attorneys on his direct appeal to the First District Court of Appeals and to the Supreme Court of Ohio.  (*See* Doc. 10 at 39, 107).

5

evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Id.* (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 401 (2013)). "The exception 'applies to a severely confined category: cases in which new evidence shows it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *Id.* (quoting *McQuiggin*, 569 U.S. at 395).

To make this assessment, courts "must consider all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under the rules of admissibility that would govern at trial." *Id.* (quoting *House v. Bell*, 547 U.S. 518, 538 (2006)). Courts must also "consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of the [new] evidence." *Id.* (quoting *House*, 547 U.S. at 537). A claim of actual innocence must be supported with "new, reliable evidence, such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence, that was not presented at trial." *Id.* (citing *House*, 547 U.S. at 537).

For example, in *Davis*, the petitioner claimed actual innocence when an eyewitness recanted his trial testimony connecting the defendant to the murder. 900 F.3d at 317-18. Before the defendant's trial, the witness had previously recanted, testifying during the trial of a co-defendant that he had lied to the police about witnessing the murder in order to receive the offered reward money. *Id.* at 318-19. Yet, after being incarcerated for perjury, the witness backtracked and ultimately provided more details about what he had seen, going on to testify at the defendant's trial to having witnessed

the assault and murder.  *Id.* at 319-20.  Years later, the witness again recanted, asserting that his father had pressured him to come forward and testify in order to get the reward money.  *Id.* at 320.

The Sixth Circuit found that the witness's most recent recantation did not make it "more likely than not that no reasonable juror would have found [the defendant] guilty beyond a reasonable doubt."  *Id.* at 329 (citing *Schlup*, 513 U.S. at 327).  While acknowledging that the witness's testimony was "the primary evidence linking [the defendant] to [the] murder," the court noted that the jury had found the witness's testimony credible despite having been aware of his earlier recantation, opportunistic behavior, and drug-related history.  *Id.*  The court further reasoned that a reasonable juror would likely find the new recantation unreliable because it "amount[ed] to another change in his story," and because his testimony implicating the defendant was corroborated by other evidence.  *Id.* at 330-31.  Finally, the court considered the circumstances surrounding the recantation, noting that the witness would not face adverse consequences for recanting.  *Id.* at 333 (citing *Allen v. Yukins*, 366 F.3d 396, 405-06 (6th Cir. 2004)) (affirming district court's finding that an "affidavit was inherently suspect because [the affiant] could have signed the affidavit in order to help his codefendant . . . without endangering his own interests").

In the instant case, the Magistrate Judge concluded that the affidavits of Petitioner's co-defendants were unreliable (Doc. 18 at 10) and bolstered this finding in the supplemental Reports and Recommendations, noting that recanted testimony is inherently suspect (Doc. 23 at 4; Doc. 28 at 5).  Petitioner persists in objecting to the

7

Magistrate Judge's conclusion that the actual innocence exception does not apply. Petitioner specifically asserts that "the testimony of his coerced co-defendants was the only evidence placing him at the scene of any of the alleged crimes" and that "there was no physical evidence or any other testimonial evidence implicating him in the alleged crimes." (Doc. 21 at 7).

Upon review of the record, the Court reaches the same conclusion as the Magistrate Judge. Although Petitioner asserts that without his co-defendants' testimony, "Mr. Shalash could not have been convicted on sufficient evidence" (*id.* at 7), that is not the pertinent question. The question is whether, in light of the evidence presented at trial, including the co-defendants' testimony implicating Shalash in the robberies plus the new evidence—the co-defendants' affidavits recanting their trial testimony—it is more likely than not that "no reasonable juror would have convicted" the petitioner. *Davis*, 900 F.3d at 326. In order to assess this likelihood, the Court must consider whether a hypothetical jury would find the recantations reliable considering the circumstances under which they were made and the extent to which the testimony is corroborated by the other evidence presented at trial. *Id.* at 330.

Like in *Davis*, in the instant case, there was evidence presented at trial that the witness previously made contradictory statements concerning the defendant's involvement in the crimes. Here, one of Shalash's co-defendants—his wife, Jennifer Neitz—testified at trial that she wrote Shalash numerous letters while in prison stating that Shalash was not involved in the robberies and that "he was going to be going home." (Doc. 10-3 at 123-128). Thus, a jury may consider Neitz's latest recantation to be just

8

another change in her story. Also like in *Davis*, the jury was made aware of the co-defendants' potential ulterior motives for testifying. In this case, both co-defendants testified that the prosecution offered them reduced sentences in exchange for their testimony implicating Shalash. (*Id.* at 130-131, 183-184). Nevertheless, the jury credited the co-defendants' testimony, convicting Shalash.

In addition, the co-defendants' testimony that Shalash was involved in the robberies as the getaway driver of a white van was corroborated by other eyewitness testimony and surveillance camera footage placing him driving a white van near the robbed banks around the time they were robbed. For example, co-defendant Jake Pfalz testified that Pfalz, Shalash, and Neitz, were together in the van when they drove to St. James Elementary school to scope out a nearby credit union. (*Id.* at 161-162). He testified that while they decided not to rob the credit union, approximately three to four hours later, they robbed a different bank—the Cheviot Savings Bank—with Shalash acting as the getaway driver. (*Id.* 163-169). Neitz similarly testified that the three defendants parked at the credit union by the school, that she entered the credit union to case it out, and that she later got in the van with Shalash and Pfalz after they decided not to rob the credit union; later robbing the Cheviot Savings Bank that afternoon with Shalash driving. (*Id.* at 86-91).

An eyewitness, Constance Lanter, the St. James school nurse, testified that she followed Pfalz, who had been acting suspiciously, from the school to the credit union where she saw "a woman . . . walking back and forth behind the credit union." (Doc. 10-2 at 144-145). She then saw Pfalz get into the passenger side of a white van. (*Id.* at 145-

9

146).  Lanter walked alongside the van and saw the driver who waved at her.  (*Id.* at 146-147).  Lanter then identified the driver as Shalash and testified that the woman also got into the van.  (*Id.* at 147).  Further, surveillance footage and additional eyewitness testimony placed Shalash and Pfalz with the white van at a Dairy Mart in front of the First Financial Bank approximately an hour and a half before the bank was robbed (Doc. 10-3 at 19-24, 27-28), with another camera showing Shalash at a gas station a mile away from the bank a half hour before the robbery.  (*Id.* at 32-36).

Approximately six months after Shalash's conviction, Pfalz and Neitz submitted handwritten affidavits recanting their trial testimony and averring that Shalash was not aware of or involved in the robberies.  (Doc. 10 at 20-22, 179-180).  Pfalz's statement simply states that he and Neitz agreed to testify against Shalash in order to get reduced sentences and that Shalash had no knowledge of or involvement in the bank robberies. (*Id.* at 180).  Neitz's affidavit also states that Shalash had no knowledge of the robberies, and further states that Pfalz and Neitz agreed to testify against Shalash because they believed he would be perceived as the leader because he is of Arab descent; whereas they would be perceived as manipulated by him, resulting in reduced sentences.  (*Id.* at 179). Neitz later submitted a supplement explaining that she initially told the police that Shalash was involved in the robberies because she was upset with him for being separated from their children following the couple's arrest on unrelated charges.  (*Id.* at 188).  She further explains that she was heavily medicated during her testimony at trial, resulting in her testifying inaccurately.  (*Id.* at 189).  Neitz also submitted a transcript of her trial testimony indicating in the margins where her testimony was untrue—essentially

10

stating that her husband was not there, that they dropped Shalash off before the robberies were planned and executed, and that she drove the van. (*Id.* at 191-291).

The jury that convicted Shalash was aware that Neitz previously wrote letters to her husband stating that he was not involved in the robberies and was also aware that the co-defendants agreed to testify against Shalash in exchange for reduced sentences. In addition, the co-defendants' testimony was corroborated by other eye-witness accounts and surveillance footage. Consequently, the Court agrees with the Magistrate Judge's conclusion that the statements recanting that testimony are inherently unreliable. Moreover, the circumstances of the recanted testimony are not compelling—they came several months after Shalash's conviction, and while Neitz's statements provide some level of detail (unlike Pfalz's affidavit), Neitz has an obvious interest in now speaking in support of Shalash—her husband. *Yancy v. Haas*, 742 F. App'x 980, 984 (6th Cir. 2018) (explaining that "family members' credibility may be discounted because they 'have a personal stake in exonerating' the defendant") (quoting *McCray v. Vasbinder*, 499 F.3d 568, 573 (6th Cir. 2007)). Thus, the Court does not find that it is more likely than not that *no reasonable juror* would be convinced of Shalash's guilt beyond a reasonable doubt.

In the first supplemental Report and Recommendation, the Magistrate Judge alternatively found that Shalash's sufficiency-of -the-evidence claim fails on the merits. (Doc. 23 at 4-6). Shalash objects to this conclusion and asserts that he was convicted "based solely on the now recanted testimony of his co-defendants which was inconsistent and unreliable," noting a lack of direct evidence implicating him. (Doc. 26 at 6-7).

11

As the Magistrate Judge properly stated, a habeas petitioner alleging a sufficiency-of-the-evidence claim must pass through two levels of deference. (Doc.23 at 5). First, the Court must review the trial court's conviction, asking whether "viewing the trial testimony and exhibits in the light most favorable to the prosecution, any reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*Id.*) (quoting *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009)). In doing so, courts may not "reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury." (*Id.*). Thus, although Shalash asserts that the co-defendants' testimony was not credible, the Court's task is not to independently assess the co-defendants' credibility in place of the jury. And while Shalash objects to a lack of direct evidence, "a court may sustain a conviction based upon nothing more than circumstantial evidence." (*Id.*) (quoting *Stewart v. Wolfenbarger*, 595 F.3d 647, 656 (6th Cir. 2010)).

Second, the Court must "defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Brown*, 567 F.3d at 205 (emphasis in original). Petitioner objects on the basis that "the jury could not have convicted without making inferences and such inferences are improper if they are 'so unsupportable as to fall below the threshold of bare rationality.'" (Doc. 26 at 7) (quoting *Coleman v. Johnson*, 556 U.S. 650, 656 (2012)). The First District Court of Appeals denied Shalash's claim based on Neitz's and Pfalz's testimony, which the court found to be corroborated by eye-witness testimony and video surveillance footage. (Doc. 10 at 94-97). Accordingly, upon review of the state appellate court's reasoning, the Court agrees

12

with the Magistrate Judge that the state court's opinion was not objectively unreasonable. (*See* Doc. 10 at 94-97).

For the reasons stated above, Petitioner's objections are overruled, and Petitioner's request for relief based on Ground One is denied.

### B.    Ground Two

Petitioner's second ground for habeas relief is based on "repeated instances of prosecutorial misconduct during his trial" in the form of statements the prosecutor made during closing arguments, including statements concerning Shalash's Muslim faith, a comment that the robberies were committed in a "heroin induced frenzy," and statement allegedly vouching for the credibility of one of the eyewitnesses. (Doc. 1 at 7, 18-19).

The Magistrate Judge found the prosecutorial misconduct claim procedurally defaulted, as Petitioner did not object to the statements during trial. (Doc. 18 at 13-15). Petitioner asserted the prosecutorial misconduct claim in his direct appeal to the First District. However, because he failed to object to the prosecutor's statements at trial, the state court of appeals reviewed the claim only for plain error. (Doc. 10 at 98). The Sixth Circuit has found that when a state court enforces the "firmly-established Ohio contemporaneous objection rule" to find waiver, the claim is considered procedurally defaulted based on an independent and adequate state ground, even when the court goes on to consider the claim under plain error review. *Wogenstahl v. Mitchell*, 668 F.3d 307, 335-37 (6th Cir. 2012). As the Magistrate Judge properly found, that is precisely what occurred in this case. (Doc. 18 at 15).

13

The Petitioner does not object to this initial finding of default, but rather, objects to the Magistrate Judge's conclusion that his default cannot be excused by his trial attorney's ineffective assistance. (Doc. 21 at 7-8). A petitioner may show "cause and prejudice" excusing the default by showing that the default resulted from ineffective assistance of counsel. Yet the petitioner is required to have raised his ineffective assistance claim in state court. *See Stokes v. Scutt*, 527 F. App'x 358, 367 (6th Cir. 2013). In other words, "[a] claim of ineffective assistance . . . must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Conley v. Warden Chillicothe Corr. Inst.*, 505 F. App'x 501, 507 (6th Cir. 2012) (citing *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000)); *see also Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005) ("To constitute cause, that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted.").

The Magistrate Judge found Petitioner's ineffective assistance claim itself procedurally defaulted because Shalash did not fairly present the claim in state court. (Doc. 18 at 16). In order for a claim to be "fairly presented" to the state court, "a petitioner must assert both the legal and factual basis for his or her claim." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (emphasis omitted) (citing *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). Thus, the claim must be presented "as a federal constitutional issue—not merely as an issue arising under state law." *Id.* (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)). "A petitioner can take four actions in his brief which are *significant to* the determination as to whether a claim has been

14

fairly presented as a federal constitutional claim: '(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.'" *Id.* (emphasis added) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)).

In his brief on direct appeal to the First District Court of Appeals under an "assignment of error" alleging prosecutorial misconduct, Shalash stated that "he received ineffective assistance of counsel when his trial counsel failed to object to these clearly prejudicial instances of prosecutorial misconduct." (Doc. 10 at 53). Shalash further stated that the "obvious impropriety" of the prosecutor's remarks warranted a finding that his attorney's conduct fell below the deferential standard afforded trial counsel's decisions and that he was prejudiced by his counsel's failure to object because his prosecutorial misconduct claim was only entitled to plain error review. (*Id.* at 53-54). Shalash concluded the section by stating that his conviction should be reversed "whether based on the clear misconduct of the prosecutor during his closing remarks, or based on the ineffectiveness of his counsel in failing to object to them." (*Id.* at 54). On direct appeal to the Supreme Court of Ohio, Shalash repeated the argument, albeit largely in a footnote, that his trial counsel was ineffective for failing to object to the prosecutor's statement. (*Id.* at 120-121, 121 n.5).

Based on these statements, the Court respectfully disagrees with the Magistrate Judge and finds that the ineffective assistance of trial counsel claim was fairly presented.

Petitioner did not invoke the Sixth Amendment or reference the *Strickland* test for constitutional ineffective assistance claims, but Shalash did cite to a state case employing federal constitutional analysis, *State v. Carpenter*, in which an Ohio court applied *Strickland* to assess whether an attorney's failure to object to a prosecutor's comments amounted to ineffective assistance of counsel.  (Doc. 10 at 53, 121 n.5) (citing *State v. Carpenter*, 688 N.E.2d 1090, 1097 (Ohio Ct. App. 1996)).  In addition, although Shalash raised this argument within his assignment of error concerning prosecutorial misconduct, he phrases the ineffective assistance claim as an alternative and independent ground for relief stating, "Mr. Shalash's conviction should be reversed and remanded for a new trial whether based on the clear misconduct of the prosecutor during his closing remarks, or based on the ineffectiveness of his counsel in failing to object to them."  (Doc. 10 at 54, 121).  Further, he addressed both prongs of the *Strickland* test: objectively unreasonable performance and prejudice.  (Doc. 10 at 53-54, 121 n.5); *see Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).

Yet, finding that Shalash's ineffective assistance claim was not defaulted does not automatically excuse his defaulted prosecutorial misconduct claim.  Shalash still has to show that his trial counsel was in fact constitutionally ineffective for failing to object to the prosecutor's comments.  *See Buell v. Mitchell*, 274 F.3d 337, 351-52 (6th Cir. 2001); *see also Erkins v. Chuvalas*, 684 F. App'x 493, 499-500 (6th Cir. 2017).  As noted above, ineffective assistance of counsel claims are governed by the two-pronged *Strickland* test, which requires defendants to show: (1) that counsel's representation fell below an objective level of reasonableness and (2) that there is a reasonable probability that, but

16

for counsel's unprofessional errors, the result of the proceeding would have been different. 466 U.S. at 688, 694; *see Hale v. Burt*, 645 F. App'x 409, 415 (6th Cir. 2016) ("A court need not assess counsel's deficient performance before considering prejudice, where the latter inquiry is an easier one.") (quoting *Altman v. Winn*, No. 14-2334, 2016 WL 1254049, at *4 (6th Cir. Mar. 31, 2016)).[2]

Petitioner argued in state court and in his federal habeas brief that he was prejudiced by his trial counsel's failure to object because his procedural misconduct claim was afforded only plain error review. (Doc. 10 at 53, 121 n.5; Doc. 15 at 12-13). However, the proper inquiry is whether there is a reasonable probability that, had counsel objected to the prosecutor's statements, *the outcome of his trial would have been different. See Erkins*, 684 F. App'x at 500; *Hale*, 645 F. App'x at 415-16. Petitioner has not met his burden of showing prejudice, and as a result, he has also failed to show "cause" to excuse default of his prosecutorial misconduct claim.

Moreover, the Court agrees with the Magistrate Judge's conclusion that regardless of the default, Petitioner's prosecutorial misconduct claim fails on the merits. (Doc. 23 at 9-13). The Magistrate Judge properly found that although the state court of appeals

---

[2] The Court analyzes Petitioner's ineffective assistance of counsel claim *de novo*, as the deferential AEDPA standard does not apply to claims made to excuse default. *Hall v. Vasbinder*, 563 F.3d 222, 236-37 (6th Cir. 2009) (citing *Joseph v. Coyle*, 469 F.3d 441, 459 (6th Cir. 2006)).

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), habeas relief is only granted when a state court's decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

applied plain error review, the claim is subject to deferential review under AEDPA.  (*Id.* at 9); *Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017) (citing *Fleming v. Metrish*, 556 F.3d 520, 531 (6th Cir. 2017)).  Although the First District cited to only Ohio case law, there is, nevertheless, a rebuttable presumption the federal claim was adjudicated on the merits.  *See Lamar v. Houk*, 798 F.3d 405, 427 (6th Cir. 2015) (finding rebuttable presumption that a claim was adjudicated on the merits when state court only addressed state-law aspect of claim) (citing *Johnson v. Williams*, 133 S. Ct. 1088, 1091, 1094, 1096 (2013)).  Shalash does not attempt to rebut this presumption.

In order to demonstrate prosecutorial misconduct, a petitioner "must show that the prosecutor's conduct so infected the trial so as to render the conviction fundamentally unfair."  *Hardaway v. Burt*, 846 F.3d 191 (6th Cir. 2017) (citing *Parker v. Matthews*, 567 U.S. 37, 45 (2012)).  Thus, the Court must consider the fairness of the trial—the "touchstone of due process analysis in cases of alleged prosecutorial misconduct." *Richardson v. Palmer*, 941 F.3d 838, 848 (6th Cir. 2019) (quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982)).  The standard is of course higher under AEDPA review, under which the Court merely examines whether the state court's opinion was an unreasonable application of clearly established law as established by Supreme Court precedent.  *Id.* at 847.

The state court of appeals considered the prosecutor's three statements concerning Shalash's religion made in his closing argument.  (Doc. 10 at 98-99).  The court found that the prosecutor's first statement that Shalash and Neitz had been married in a mosque

did not "serve to inflame the jury's passions." (*Id.*). The second statement, made in the context of a discussion about Neitz's and Pfalz's credibility stated:

> Is it common sense? Is it believable? Do you believe that a Muslim wife is going to somehow be driving around town with an outsider, Pfalz, a stranger to the family, robbing banks, and the husband has been with him just moments before and somehow he leaves the picture with the kids in the van?

(*Id.* at 99). In a third statement, the prosecutor said in rebuttal:

> Are you kidding me? Give me a break. And a Muslim wife on top of that. In that culture the women aren't even supposed to be out without a male relative and we got her robbing banks with a non-male relative with the kids in the truck. Give me a break. Give me a break.

(*Id.*). The court of appeals found these statement "arguably improper" but "not so inflammatory that we can conclude that Shalash's convictions resulted from passion and prejudice instead of the state's proof of his guilt." (*Id.* at 99). The court further noted that the state provided "overwhelming evidence of Shalash's guilt" and held that "none of the comments were so prejudicial or outcome determinative as to . . . deny Shalash a fair trial." (*Id.*). Upon review, the Magistrate Judge concluded that this analysis did not constitute an unreasonable application of standards adopted by the Supreme Court. (Doc. 23 at 13).

Petitioner objects to this conclusion, citing to several circuit court opinions in support of his assertion of prosecutorial misconduct.[3] (Doc. 26 at 8-9). However, Petitioner cites no Supreme Court cases in his objections, and "[t]he Supreme Court has

---

[3] Petitioner only objected to the Report and Recommendation's finding with respect to the prosecutor's statements about Shalash's religion.

reminded us countless times that 'circuit precedent does not constitute clearly established Federal law' and 'therefore cannot form the basis for habeas relief under AEDPA.'" *Stewart*, 867 F.3d at 641 (quoting *Parker*, 567 U.S. at 48-49 (2012)). Accordingly, Petitioner's objection is overruled, and the Court adopts the Report and Recommendation's finding that Petitioner's second ground for habeas relief is procedurally defaulted, and, alternatively, that it fails on the merits.

### C.    Ground Three

Petitioner's third ground for habeas relief asserts that he was denied a fair trial because the jury was not instructed that the firearm specifications must be proven beyond a reasonable doubt. (Doc. 1 at 8). The Report and Recommendation found this claim to be procedurally defaulted. (Doc. 18 at 18-19). Like with Ground Two, Shalash raised the jury instruction issue on direct appeal, but the state court of appeals reviewed the claim for plain error only because Shalash had not objected to the issue during his trial. (*Id.*). The state court of appeals relied on this independent and adequate state ground to reject the claim. (*Id.*; Doc. 10 at 100-102). Shalash concedes that the claim is procedurally defaulted, yet argues that his default should be excused because "he will suffer a miscarriage of justice if he is unable to bring this claim on the merits as the defective jury instruction created a *structural error* . . . of a constitutional nature [a]ffecting the fairness of the entire trial . . . ." (Doc. 15 at 16) (emphasis added).

The Court agrees with and adopts the Report and Recommendation's analysis finding that Ground Three is procedurally defaulted. [4]  (Doc. 18 at 19-20; Doc. 23 at 13-14).  As the Magistrate Judge explained, procedural default may be excused in order to avoid a "miscarriage of justice," but that exception applies only upon the presentation of new, reliable evidence showing the petitioner is actually innocent.  *Dufresne v. Palmer*, 876 F.3d 248, 256 (6th Cir. 2017) (citing *Schlup*, 513 U.S. at 321, 324).  As discussed above, Petitioner has failed to make that showing.  *See* Part II.A, *supra*.

In any case, Petitioner does not appear to be asserting actual innocence to excuse the default of his jury instruction error claim.  Rather, Petitioner seems to be arguing that the default should be excused because the error alleged is a "structural error."  However, the Sixth Circuit has rejected the argument that a claim involving structural error is not subject to procedural default.  *Carruthers v. Mays*, 889 F.3d 273, 289 (6th Cir. 2018); *see also Ambrose v. Booker*, 684 F.3d 638, 649 (6th Cir. 2012) (holding that a petitioner "must show actual prejudice to excuse their default, even if the error is structural").  Accordingly, even assuming the error was structural, such a finding would not, in and of itself, excuse the default.

In his first set of objections, Petitioner makes a slightly different argument, asserting that "Ohio's contemporaneous objection rule is excused where there is structural error . . . ."  (Doc. 21 at 9).  The Court understands this argument to be that the claim was not procedurally defaulted, because the state court of appeals improperly

---

[4] The Magistrate Judge properly distinguished the cases Petitioner relied on as not involving procedural default of habeas claims.  (Doc. 23 at 13-14).

applied the Ohio contemporaneous objection rule in the face of this allegedly structural error.  This relates to the first step of the *Maupin* test, which is used by courts to assess whether a claim has been procedurally defaulted.  *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  The first step of this four-part test asks whether "there is a state procedural rule that applies and petitioner failed to comply with that rule[.]"  When a state court has misapplied its own procedural rule, the claim is not barred from habeas review.  *Post v. Bradshaw*, 621 F.3d 406, 423 (6th Cir. 2010) (citing *Hill v. Mitchell*, 400 F.3d 308, 314 (6th Cir. 2005)).

This argument fails for two reasons.  First, Petitioner has conceded in his reply brief that Ground Three is procedurally defaulted, which could be considered a judicial admission.  (Doc. 15 at 16); *See Beasley v. Wells Fargo Bank, N.A.*, 744 F. App'x 906, 914 (6th Cir. 2018) (finding that a statement made in a brief may be binding on the district court and court of appeals).  Second, the Court finds that the Ohio court of appeals did not err in applying the Ohio contemporaneous objection rule.  The First District Court of Appeals specifically analyzed whether Shalash's assertion that the failure to instruct the jury that the gun specifications had to be proven beyond a reasonable doubt amounted to a structural error requiring automatic reversal as opposed to plain error review.  (Doc. 10 at 100-101).   The court cited multiple state-court decisions applying plain error review under similar factual circumstances—where the defendant failed to object to the fact that the jury instructions did not specifically state that a gun specification had to be proven beyond a reasonable doubt.  (*Id.* at 101) (citing

*State v. Blankenship*, 657 N.E.2d 559 (Ohio Ct. App. 1995); *State v. Norman*, No. C-920202, 1993 Ohio App. LEXIS 133, at *8-9 (Ohio Ct. App. Jan. 20, 1993)).

The state court of appeals also distinguished *Sullivan v. Louisiana*, in which the Supreme Court found that jury instructions *misstating* the reasonable doubt standard warranted reversal. 508 U.S. 275, 281-82 (1993). The court noted that in the instant case, the court instructed the jury multiple times of the correct reasonable doubt standard and further instructed the jury that the state had to prove the elements of each offense listed in that count beyond a reasonable doubt. (Doc. 10 at 100-101). In short, Petitioner acknowledges he failed to object to the jury instructions, implicating Ohio's contemporaneous objection rule. Finding no structural error, the court properly applied this independent and adequate ground to deny review of Petitioner's claim.

The Magistrate Judge reviewed the substance of Ground Three in the alternative, finding the claim to be without merit. (Doc. 18 at 20-23). The Magistrate Judge correctly afforded the First District Court of Appeals' decision deferential review under AEDPA. *See Stewart*, 867 F.3d at 638 (citing *Fleming*, 556 F.3d at 521). The Court agrees with and adopts the Magistrate Judge's finding that the state court of appeals reasonably applied Supreme Court precedent concerning erroneous jury instructions. As discussed above, the court of appeals distinguished *Sullivan v. Louisiana*, 508 U.S. 275 (1993), which found that jury instructions misstating the reasonable doubt standard (lowering the state's burden of proof) essentially resulted in "no jury verdict within the meaning of the Sixth Amendment" amounting to a "structural error." (Doc. 10 at 100-101); 508 U.S. at 280-82. The court noted that unlike in *Sullivan*, the jury in the instant

23

case was given accurate beyond-a-reasonable-doubt instructions multiple times. (Doc. 10 at 100). In addition, the court considered the fact that the instruction was repeated at the end of each count in the indictment, with the jury informed that the state must prove each element of the listed offenses beyond a reasonable doubt. (Doc. 10 at 100-101).

Petitioner objects to the Report and Recommendation's analysis of the merits, asserting that because the beyond-a-reasonable-doubt instruction was not given in conjunction with the firearm specification, this "omission of the standard is certainly at least as offensive as misstating the burden of proof." (Doc. 21 at 10). Yet, the Court agrees with the Magistrate Judge that the state court of appeals' application of *Sullivan* was objectively reasonable for the reasons stated *infra*. Therefore, Petitioner's third ground for habeas relief is denied as procedurally defaulted, and, alternatively, as meritless.

### D.    Ground Four

Shalash's fourth ground for relief states that he "was denied his right to effective assistance of counsel and due process when the trial court denied his Petition for Post-Conviction Relief without a hearing." (Doc. 1 at 10). Petitioner filed a petition for post-conviction relief pursuant to R.C. § 2953.21 asserting that Shalash's conviction should be vacated because his co-defendants recanted their trial testimony. (Doc. 10 at 176). Shalash also filed a supplement to his initial petition for post-conviction relief, adding a Sixth Amendment ineffective assistance of counsel claim on the basis that his trial counsel failed to investigate possible alibi witnesses. (*Id.* at 310). Shalash also asserted in the supplemental petition that his trial counsel did not follow up on information

24

Shalash provided that would allegedly show that the gun used in the robberies had been confiscated prior to the charges against Shalash.  (*Id.*).  Shalash submitted affidavits of his co-defendants to support the first claim and submitted his own affidavit in support of his ineffective assistance claim.  The trial court denied the petition, finding both claims to be barred by res judicata, reasoning that Petitioner could have raised both claims on direct appeal.  (*Id.*).  The court alternatively found that the claims failed on the merits, holding, with respect to the ineffective assistance claim, that even accepting Shalash's statements as true, he failed to demonstrate his counsel was ineffective under *Strickland*. (*Id.*).

Shalash then appealed this decision to the state court of appeals, asserting one assignment of error: "[t]he trial court abused its discretion to the prejudice of Mr. Shalash when it denied his post-conviction motion without holding a hearing."  (*Id.* at 341).  The court of appeals affirmed the trial court's denial without an evidentiary hearing, finding that Shalash had not demonstrated substantive grounds for postconviction relief—the standard for a post-conviction hearing pursuant to R.C. § 2953.21(D) (formerly codified at R.C. § 2953.21(C)).  (*Id.* at 373-375).

Petitioner's federal habeas petition asserts that Shalash was "denied his right to effective assistance of counsel and due process *when the trial court denied his [petition] without a hearing*."  (Doc. 1 at 10) (emphasis added).  The Court agrees with the Magistrate Judge that, to the extent Petitioner seeks relief based on the trial court's denial of an evidentiary hearing, that claim is outside the scope of federal habeas review.  *See Cornwell v. Bradshaw*, 559 F.3d 398, 412 (6th Cir. 2009) (finding petitioner's claim that

state and district court improperly denied evidentiary hearing "not cognizable in habeas

corpus proceedings, which cannot be used to challenge errors or deficiencies in state

court post-conviction proceedings") (citing *Kirby v. Dutton*, 794 F.2d 245, 247 (6th Cir.

1986)).  Petitioner objects to the Report and Recommendation's alternate findings that

the claim was procedurally defaulted and fails on the merits.  (Doc. 21 at 10-11).  These

objections are overruled, as Petitioner's claim fails on the basis that it is not cognizable

under habeas.

Petitioner also states in one set of objections that he has alleged a claim of

ineffective assistance of counsel, asserting that the lower court unreasonably applied

*Strickland*.  (Doc. 21 at 12).  However, the Court does not find that Petitioner has alleged

ineffective assistance of counsel as a basis for habeas relief.  While it is unclear what

Shalash meant by his statement under Ground Four that he was denied effective

assistance of counsel *because the trial court denied him a post-conviction hearing*; in

context, the most natural reading is that Shalash believes he was denied his right to fully

present his ineffective assistance claim because he did not receive a hearing in state court.

The facts supporting Shalash's fourth ground for relief indicate that Shalash had

presented evidence outside of the record to the state court, in the form of affidavits.

(Doc. 1 at 18-19).  That Shalash had presented affidavits to the state court supports his

assertion under Ground Four that an evidentiary hearing was appropriate.  Shalash's

federal habeas petition summarizes the contents of his affidavit in support of his

ineffective assistance claim.  (*Id.* at 19).  Yet, the petition does not assert that his

attorney's alleged conduct violated Shalash's Sixth Amendment right to effective

assistance, nor does the petition allege prejudice in any way (*i.e.*, that but for his attorney's missteps the outcome of his trial would have likely been different).

Shalash does discuss the merits of his ineffective assistance claim in his reply brief or "traverse." (Doc. 15 at 19-21). However, even there, Shalash concludes the section by stating that Shalash "presented grounds to support his claim of ineffective assistance of counsel in violation of his Sixth Amendment right to counsel" but that he "was never given the opportunity to fully present his claims for post-conviction relief in the trial court despite the[ir] likely meritorious nature." (Doc. 15 at 21). Thus, it is apparent that to the extent Shalash addresses the merits of his ineffective assistance claim, he does so in order to bolster his assertion under Ground Four that a hearing on the issue was warranted.

Moreover, the fact that Shalash addresses the merits of his ineffective assistance claim in his reply brief does not excuse his failure to do so in his § 2254 petition. That is because an issue raised for the first time in a reply brief or traverse is not properly before the court. *See Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005) (finding penalty-phase as opposed to guilt-phase insufficiency argument waived because it was raised for the first time in petitioner's traverse). Accordingly, the Court need not separately address an ineffective assistance claim, as Shalash has either not presented such a claim or has forfeited the claim by addressing it for the first time in his traverse. For the foregoing reasons, habeas relief based on Ground Four is denied.

### III.    CONCLUSION

As required by 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b), the Court has reviewed the comprehensive findings of the Magistrate Judge and considered *de novo* all of the filings in this matter.  Upon consideration of the foregoing, the Court does determine that the Reports and Recommendations (Docs. 18, 23, 28) should be and are hereby **ADOPTED** as modified herein.

Accordingly:

1)     Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is **DISMISSED with prejudice**;

2)     Petitioner's objections (Docs. 21, 26, 29) are **OVERRULED**;

3)     A certificate of appealability shall not issue, because reasonable jurists would not disagree with this conclusion; and

4)     The Clerk shall enter judgment accordingly, whereupon this case is **TERMINATED** on the docket of this Court.

**IT IS SO ORDERED.**

Date: June 15, 2020                                          *s/ Timothy S. Black*
                                                                     Timothy S. Black
                                                                     United States District Judge

28